D'Arrigo v Long Is. Concrete Inc. (2025 NY Slip Op 25017)

[*1]

D'Arrigo v Long Is. Concrete Inc.

2025 NY Slip Op 25017

Decided on January 26, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 26, 2025
Supreme Court, Kings County

Victor D'Arrigo, Plaintiff,

against
Long Island Concrete Inc., the SCO Family of Services, Suffolk Construction Company, Inc., and the YMCA of Greater New York, Defendants.
Long Island Concrete Inc., Third-Party Plaintiff,
against
Barbieri Fence Corp. d/b/a Eagle Fence a/k/a Eagle Fence NYC, 
 and Eagle Fence NYC, Third-Party Defendants.

Index No. 519403/2019

Kazmierczuk & McGrath, Forest Hills (Joseph Kazmierczuk of counsel), for Plaintiff. 
Kerley, Walsh, Matera & Cinquemani, P.C., Seaford (Patrick J. Shelley of counsel), for Defendant/Third-Party Plaintiff Long Island Concrete Inc.
Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains (Michael Guttman of counsel), for Defendants Suffolk Construction Company, Inc. and The YMCA of Greater New York. 
Quintairos, Prieto, Wood & Boyer, P.A., New York City (Taylor M. Williams of counsel), for Third-Party Defendants Barbieri Fence Corp d/b/a Eagle Fence a/k/a Eagle Fence NYC and Eagle Fence NYC. 

Aaron D. Maslow, J.

The following numbered papers were read on these motions: NYSCEF Document Numbers 170-178, 179-200, 201-212, 213-237, 238-248, 249-257, 258-261, 262-268, 269-271, 272-275, 276-281, 282-284, 286-291, 292-294.
Upon the foregoing papers, having heard oral argument,[FN1]
and due deliberation having been had, the within motion is determined as follows.
Issue
Does Labor Law § 240 (1), a statute that is used to protect workers from falling objects and imposes responsibility for safety practices on those best situated to bear that responsibility, apply to a Rhino, a pneumatic post driver tool that runs on an air compressor and is used to install posts, when a worker, in the process of installing a fence, becomes injured from the Rhino shooting upward and then falling downward? This Court's research has yielded no case law concerning the applicability of Labor Law § 240 (1) to a Rhino.

Introduction
Four motions in this case are presently before the Court:
Motion Sequence 8: This is a motion by Plaintiff Victor D'Arrigo ("Plaintiff"), for an order granting him partial summary judgment on his Labor Law § 240 (1) cause of action against Defendant/Third Party Plaintiff Long Island Concrete Inc. and Defendants Suffolk Construction Company, Inc. and The YMCA of Greater New York.
Motion Sequence 9: This is a motion by Defendant/Third-Party Plaintiff Long Island Concrete Inc. for an order pursuant to CPLR § 3212 granting it summary judgment and dismissing Plaintiff's complaint in its entirety along with any and all cross-claims.
Motion Sequence 10: This is a motion by Third-Party Defendants Barbieri Fence Corp. d/b/a Eagle Fence a/k/a Eagle Fence NYC and Eagle Fence NYC for an order pursuant to CPLR § 3212 granting summary judgment in their favor and dismissing the third-party complaint and all claims against them.
Motion Sequence 11: This is a motion by Defendants Suffolk Construction Company, Inc. and The YMCA of Greater New York for an order pursuant to CPLR § 3211 and CPLR § 3212 granting summary judgment: (1) dismissing Plaintiff's claims against them, (2) dismissing Defendant Long Island Concrete's cross-claims against them, and (3) awarding them complete contractual indemnification against Long Island Concrete for all costs, expenses, attorneys' fees, damages, and/or liability incurred.
Summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]). The party moving for summary judgment must present a prima facie case of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form demonstrating the absence of material issues of fact, and the failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see CPLR 3212 [b]; Smalls v AJI Industries, Inc., 10 NY3d 733 [2008]; Alvarez 68 NY2d at 324). Once a prima facie showing has been made, however, the burden shifts [*2]to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution or tender an acceptable excuse for the failure to do so; mere expressions of hope are insufficient to raise a genuine issue of fact (see Zuckerman v City of New York, 49 NY2d 557 [1980]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (see Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223, 231 [1978]).

Background
This case arises from a worksite incident in which Plaintiff Victor D'Arrigo ("Plaintiff") was engaged in the installation of a fence around a construction site. The construction project involved the erection of a guard shack at the YMCA Christopher School, which was located at 1250 East 229th Street, Bronx, New York (see NYSCEF Doc No. 174, Pltf EBT tr at 20). Defendant Suffolk Construction Company, Inc. ("General Contractor Suffolk") was the general contractor on the construction project (see NYSCEF Doc No. 175, Salorio EBT tr at 10-11). Defendant Long Island Concrete Inc. ("Long Island Concrete") entered into a contract with General Contractor Suffolk in which Long Island Concrete was hired to install a temporary fence and build a new guard shack (see NYSCEF Doc No. 176, Elias EBT tr at 13-14). In turn, Long Island Concrete hired Plaintiff's employer, Subcontractor Barbieri Fence Corp. d/b/a Eagle Fence ("Eagle Fence"), which performed industrial fence work, to install the temporary fence (see NYSCEF Doc No. 171, McGrath aff ¶ 28).
Plaintiff alleges that on September 20, 2018, Plaintiff sustained injuries when an unsecured tool that he was using to install fence posts, a Rhino,[FN2]
dislodged from the top of the fence and fell on him (see NYSCEF Doc No. 171, McGrath aff ¶ 3). Plaintiff testified that on the day of the accident, he and his co-worker, Vincent Formisano ("Plaintiff's co-worker"), were installing a fence around the property line of the Christopher School (see NYSCEF Doc No. 174, Pltf EBT tr at 20). Plaintiff and his co-worker were employed by Third-Party Defendant Eagle Fence, which entity was a subcontractor of Long Island Concrete Inc. (see McGrath aff ¶ 5). An image of the Rhino tool, a pneumatic post installation driver that runs on an air compressor, similar to the one at issue herein, is depicted at NYSCEF Doc No. 235 (cached at 
https://www.nycourts.gov/reporter/webdocs/D'ArrigovLongIsConcreteInc_Rhinotool.pdf).
The Rhino has a sleeve on the bottom that is placed over the top of the post being set in the ground (see NYSCEF Doc No. 171, McGrath aff ¶ 6). The sleeve of the Rhino is placed atop [*3]the post while the post is on an angle. Plaintiff, along with his co-worker, would lift a post into the vertical position (id.). Once a post was vertical, Plaintiff or his co-worker would engage the Rhino, which is designed to slide up and down, and pound the post into position (id. at ¶ 7). Once the post was in position, Plaintiff or his co-worker would climb a ladder and safely remove the Rhino (id.). Regarding the securing of the Rhino, Plaintiff's co-worker testified that there was nothing to lock the Rhino into position when it was on top of the post (see Formisano EBT tr at id. at 9-10, 36-37).
Regarding the accident at issue, Plaintiff testified that the accident took place on the first day that he worked on this construction project (see NYSCEF Doc No. 174, Pltf EBT tr at 19). When the accident occurred, Plaintiff and his co-worker placed the Rhino on top of the post and, as they were lifting the post into the vertical position, the Rhino misfired ("just popped off") and came off the post (id. at 47). Plaintiff also alleges that the Rhino, weighing between 55 and 80 pounds, fell to the ground from above his head at 2 to 2½ feet and struck him in the head on its way down to the ground (see NYSCEF Doc Nos. 171, McGrath aff ¶ 8; 174, Pltf EBT tr at 55).[FN3]

As a result, it is Plaintiff's position that the foregoing evidence establishes that the Rhino was a tool that required securing (see NYSCEF Doc No. 171, McGrath aff ¶ 9). Specifically, Plaintiff claims that the safety device featured on the Rhino, namely, the sleeve, which was designed to keep the 55+ pound Rhino on the pole through the post installation process, failed to keep the Rhino in position until it could safely be removed after the post was set in the ground (id.). Consequently, Plaintiff concludes that this evidence establishes a violation of Labor Law § 240 (1), thereby purportedly warranting the granting of summary judgment in Plaintiff's favor on the Labor Law § 240 (1) cause of action (id.).

 Further Rhino Details
Plaintiff testified that the first task in installing the fence was to unbundle the posts and mark where the posts needed to be installed (see NYSCEF Doc No. 174, Pltf EBT tr at 28-29). After they laid out the posts, Plaintiff laid out the hoses for the Rhino, which was connected to the air compressor (id. at 30).
The bottom of the Rhino had a round sleeve and the Rhino was positioned on top of the post (id. at 36). To lace the Rhino onto the post, the post is held at an angle and the Rhino is set on the top of the post (id. at 36). After the Rhino was positioned on the post, Plaintiff and his co-worker would lift the post to a vertical position (id. at 36-39).
Regarding the way the Rhino operated, Plaintiff testified that there was a trigger on the Rhino which engages it (id. at 28-51). Once the post was in the vertical position, the trigger was engaged and the pneumatic action of the Rhino would drive the post into the ground (id. at 51-52). The posts were eight feet tall and were driven approximately two feet into the ground (id. at 41-42). Before installing a post, Plaintiff or his co-worker would set up a six-foot A-Frame ladder next to the post (id. at 42). Afterwards, once the post was set, a worker would climb the [*4]ladder and safely lift the Rhino off the post (id. at 41).

Further Accident Details
Plaintiff testified that immediately before the accident, he and his co-worker positioned the post that they were installing on a 45-degree angle (id. at 54). Neither he nor his co-worker lost control of the post that they were lifting (id. at 53). Plaintiff testified that he did not know whether his co-worker hit the trigger, and further testified that the Rhino hit him on the left side of the head (id. at 52, 56). Moreover, Plaintiff's co-worker testified that before the accident, he engaged the Rhino by pressing the trigger (see NYSCEF Doc No. 177, Formisano EBT tr at 35). According to Plaintiff's co-worker, he had never seen this happen before (id. at 36-37).

 Plaintiff's Contentions
Plaintiff requests that summary judgment be granted to him on his Labor Law §240 (1) cause of action because the evidence establishes that the Rhino was a tool that required securing, and that the purported failure to secure the tool constituted a Labor Law §240 (1) violation (see NYSCEF Doc No. 171, McGrath aff ¶ 48). Plaintiff argues that the fact that before the accident Plaintiff and his co-worker placed the Rhino atop the post and the fact that the Rhino bounced off the post ultimately striking Plaintiff in the head supports a Labor Law §240 (1) violation.
Labor Law § 240 (1) provides in pertinent part the following: "All contractors and owners and their agents, . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed" (emphasis added).
For example, as seen below, Plaintiff alleges the following by weaving in gravity-related phraseology used by courts in the Labor Law §240 (1) context: "This evidence demonstrates that the accident was caused by the force of gravity on the Rhino after it came off of the post. This evidence demonstrates the Rhino failed to function in the manner in which it was designed and exposed the plaintiff to the risk of injury from the falling Rhino." (NYSCEF Doc No. 171, McGrath aff at ¶ 49.)
Plaintiff adds: "Since the evidence is undisputed, there are no material questions of fact which would require a trial. Therefore the plaintiff's motion for partial summary judgment on the Labor Law §240 (1) cause of action should be granted." (Id. at ¶ 50.)
Plaintiff relies on Henningham v Highbridge Community Hous. Dev. Fund Corp. (91 AD3d 521 [1st Dept 2012]), in which "Plaintiff and his coworkers were dropping construction debris, such as broken cinder blocks, from the roof of a six- or seven-story building into a hard plastic chute in front of the building. When it became clear that the chute was clogged, plaintiff went down to the second floor, leaned slightly outside the window frame, and unclogged the chute by poking the debris. Shortly after telling his coworkers that the chute was clear, plaintiff was struck on the back of the head by a cinder block." (Id. at 522 [1st Dept 2012].) The First Department held that "Labor Law § 240 (1) applied to plaintiff's accident" because "[F]alling object liability under Labor Law § 240 (1) is not limited to cases in which the falling object is in the process of being hoisted or secured" (id. [internal quotation marks omitted]). In the Henningham case, "partial summary judgment was correctly granted to plaintiff, because defendants failed to raise an issue of fact whether plaintiff had a[n] adequate safety device [*5]available" (id.). As a result, the First Department concluded that "If the debris chute had been functioning properly, it would not have become clogged, plaintiff would not have been sent to unclog it, and he would not have been injured. Since plaintiff's accident was caused, at least in part, by defendants' failure to provide an adequate safety device, plaintiff's alleged act of placing his head and upper body inside the chute could not have been the sole proximate cause of the accident" (id. [emphasis added]). Relying on this case, Plaintiff asserts that if the Rhino, like the debris chute, had been operating functionally, then it would not have gone upward, then downward; it would not have struck Plaintiff in the head and shoulder.
Plaintiff also relies on Gonzalez v Madison Sixty, LLC (216 AD3d 1141 [2d Dept 2023]), in which "The plaintiff Emilio Gonzalez . . . allegedly was injured while working at a construction project at [a] premises owned by the defendant Madison Sixty, LLC. . . ." (id. at 1141). In Gonzalez, "the injured plaintiff and his coworkers were attempting to transport a compressor, which weighed approximately 300 pounds, from a sidewalk to the street. To reach the street, the compressor had to cross a trench approximately two feet deep, which the workers had covered with a ramp made of plywood. As the workers moved the compressor across the ramp, the ramp broke, causing the compressor to fall into the trench and the handle of the compressor to strike the injured plaintiff's foot" (id.). The Second Department held that the injured plaintiff in Gonzalez "established [his] prima facie entitlement to judgment as a matter of law on the cause of action alleging a violation of Labor Law § 240 (1)" because "the injured plaintiff's accident was proximately caused by Madison's failure to provide appropriate safety devices to protect against gravity-related hazards posed by maneuvering the compressor over the trench," and "the injured plaintiff's accident was the result of an elevation differential within the scope of Labor Law § 240 (1)" (id. at 1142). Relying on Gonzalez, Plaintiff's counsel asserts that the unexpected occurrence like the compressor in Gonzalez was an accident, but that if something is foreseeable, then it is not an accident. According to Plaintiff's counsel, the event at issue in this case was not an accident and was foreseeable because there was a risk of the Rhino not being secured and not functioning properly.

 Discussion of Labor Law § 240 (1) Applicability
"The purpose of [Labor Law § 240 (1)] is to protect workers and to impose the responsibility for safety practices on those best situated to bear that responsibility" (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993]). "It is by now well established that the duty imposed by Labor Law § 240 (1) is nondelegable and that an owner or contractor who breaches that duty may be held liable in damages regardless of whether it has actually exercised supervision or control over their work" (id.).
"Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield an injured worker from harm directly flowing from the application of the force of gravity to an object or person" (id. at 501 [emphasis in original]). In order to accomplish this goal, the statute places the responsibility for safety practices and safety devices on owners, general contractors, and their agents who are "best situated to bear that responsibility" (id. at 500; see also Zimmer v Chemung County Perf. Arts, 65 NY2d 513, 520 [1985]). Further,"[t]he duty imposed by Labor Law § 240 (1) is nondelegable and . . . an owner or contractor who breaches that duty may be held liable for damages regardless of whether it has actually exercised supervision or control over the work" [*6](Ross, 81 NY2d at 500).
Given the exceptional protection offered by Labor Law § 240 (1), the statute does not cover accidents merely tangentially related to the effects of gravity. Rather, gravity must be a direct factor in the accident as when a worker falls from a height or is struck by a falling object (see Ross at 501; Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991]). As explained in Narducci v Manhasset Bay Assoc. (96 NY2d 259, 267-268 [2001]), Labor Law § 240 (1) applies to both "falling worker" and "falling object" situations. Regarding falling objects, Labor Law § 240 (1) applies where the falling of an object is related to "a significant risk inherent in . . . the relative elevation . . . at which materials or loads must be positioned or secured" (Rocovich, 78 NY2d at 514). As a result, for Labor Law § 240 (1) to apply, a plaintiff must show more than simply that an object fell causing injury to a worker. A plaintiff must show that the object fell, while being hoisted or secured, because of the absence or inadequacy of a safety device of the kind enumerated in the statute (see, e.g., Pope v Supreme-K.R.W. Constr. Corp., 261 AD2d 523 [2d Dept 1999]; Baker v Barron's Educ. Serv. Corp., 248 AD2d 655 [2d Dept 1998]).
As stated in Ross, as a pre-condition to relying on Labor Law § 240 (1) in a falling object case, a plaintiff must establish that there was a failure to use, or the inadequacy of, a safety device of the kind enumerated in the statute. "Labor Law § 240 (1)'s list of required safety devices (e.g., 'scaffolding,' 'hoists,' 'braces,' 'irons' and 'stays'), all of which are used in connection with elevation differentials, evinces a clear legislative intent to provide "exceptional protection" for workers against the 'special hazards' that arise when the work site either is itself elevated or is positioned below the level where 'materials or load [are] hoisted or secured' " (Ross, 81 NY2d at 500-501). "In other words, Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person. The right of recovery afforded by the statute does not extend to other types of harm, even if the harm in question was caused by an inadequate, malfunctioning or defectively designed scaffold, stay or hoist" (Ross, 81 NY2d at 501).
Labor Law § 240 (1) "is to be construed as liberally as may be for the accomplishment of the purpose for which it was . . . framed" (Koenig v Patrick Constr. Corp., 298 NY 313, 319 [1996] [internal quotation marks omitted], quoting Quigley v Thatcher, 207 NY 66, 68 [1912]). However, this principle operates to impose absolute liability only after a violation of the statute has been established. Even "a violation of [Labor Law § 240 (1)] cannot 'establish liability if the statute is intended to protect against a particular hazard, and a hazard of a different kind is the occasion of the injury' " (Rocovich, 78 NY2d at 513, quoting De Haen v Rockwood Sprinkler Co., 258 NY 350, 353 [1932]).
Applying the above case law, Plaintiff does not identify in his moving papers a safety device of the kind enumerated in Labor Law § 240 (1) which is regularly used to prevent a Rhino [FN4]
from shooting upward into the air after being placed snugly on top of a fence post. [*7]Moreover, Plaintiff did not retain an engineering expert to assert whether Defendants could have employed a safety device to avoid the accident at issue here which, frankly, was an unusual, unforeseeable one. Everyone appears to have been startled with what transpired: the Rhino, designed to use pneumatic pressure to drive a post into the ground, shot upward.
Throughout their moving papers, Defendants characterize the fact pattern associated with Plaintiff's case as unorthodox in nature and ill-suited for relief under Labor Law § 240 (1), warranting summary judgment. Defendants Suffolk Construction Company, Inc. and The YMCA of Greater New York assert in their motion for summary judgment that the type of accident which occurred was not one intended to be covered by the Labor Law § 240 (1) statutory scheme:
Here, the factual record demonstrates that Plaintiff's accident was not attributable to an expected/foreseeable elevation-related risk presented by the work, or to the special type of risks and associated safety devices contemplated by Labor Law § 240 (1) (see NYSCEF Doc No. 215, Memorandum of Law ¶ 10).
In reviewing case law, one perceives that falling object situations covered by Labor Law § 240 (1) involve gravity-related perils which are obvious. For example, in Outar v City of New York (286 AD2d 671 [2d Dept 2001]), the plaintiff, a track worker for the New York City Transit Authority, sustained injuries while working on subway tracks. Specifically, the plaintiff was lifting pieces of track and replacing them when an unsecured dolly, which was used in connection with his work and was stored on top of a "bench wall" that was five-and-a-half feet high and adjacent to the worksite, fell and hit him (see id.). In response to the plaintiff's motion for summary judgment on the issue of liability under Labor Law § 240 (1), the Second Department ruled that, contrary to the Supreme Court's determination and the defendant's contention, the height differential was sufficient to implicate the special protections afforded by Labor Law § 240 (1) (id.). The Second Department asserted that the fact that the plaintiff alleged that he was injured when the unsecured dolly fell from the top of the bench wall while he was engaged in replacing pieces of the tracks, and the fact that the defendant did not assert that the dolly was secured prior to the accident, resulted in the plaintiffs being entitled to summary judgment on the issue of liability on their cause of action to recover damages based on a violation of Labor Law § 240 (1) (id. at 673).
Moreover, in Rutkowski v New York Convention Ctr. Dev. Corp., 146 AD3d 686 [1st Dept 2017], the plaintiff sustained injuries while removing furniture at the conclusion of a trade show when a lighting bar removed from the top of a boot fell and struck him. It was held by the First Department that the lighting bar required securing to prevent it from becoming dislodged or falling onto workers below, and that as a result, Labor Law § 240 (1) was violated, warranting summary judgment in favor of the plaintiff in that no securing device was provided (see id.).
In Fabrizi v 1095 Ave. of Americas, L.L.C., 22 NY3d 658 (2014), Plaintiff, an electrician, was injured in the course of repositioning a "pencil box" that served as an access point for telecommunication wires. He was struck in the hand by a piece of galvanized steel conduit pipe. The pipe had been suspended at ceiling level and was attached to another piece of pipe by a [*8]compression coupling. The Court ruled that the purportedly inadequate compression coupling was "not a safety device 'constructed, placed, and operated as to give proper protection' from the falling conduit" since its "only function was to keep the conduit together as part of the conduit/pencil box assembly" (id. at 663). Similarly, it appears that the only function of the sleeve of the Rhino was to keep the Rhino together, too, and not as a "safety device." However, while it is obvious that an inadequately secured pipe at ceiling level has the potential for falling down and injuring someone, nothing has been presented to show that anyone would possess a concern about a Rhino malfunctioning and acting in effect as a rocket shooting upward and, then eventually due to gravity, downward.
In Diaz v HHC TS Reit LLC, 193 AD3d 640 [1st Dept 2021], where the plaintiff "was injured by metal conduit pipes that toppled onto his head and shoulder," there was "unrebutted evidence that the metal pipes, which were four inches in diameter and approximately 8 to 12 feet high in length, were resting vertically, unsecured, against the column," and that the "plaintiff's work did not involve the pipes" (id. at 641). The First Department concluded that "the pipes were not adequately secured for the purpose of the undertaking, as required by Labor Law § 240 (1)" (id.). Again, this is an instance of unsecured materials which obviously pose a danger; not so a Rhino.
In Vicari v Triangle Plaza II, LLC (16 AD3d 672 [2d Dept 2005]), a construction worker brought suit under the Labor Law to recover damages for personal injuries sustained when he was struck by a backhoe. The Second Department held, "The plaintiffs did not establish their prima facie entitlement to judgment as a matter of law on their cause of action to recover damages for a violation of Labor Law § 240 (1), as they did not demonstrate that the injuries alleged arose from a special elevation-related risk for which the protective devices in the statute were prescribed" (id. at 673). Plaintiff has not presented any evidence that a protective device enumerated in Labor Law § 240 (1) has been prescribed as a matter of common safety practice when a Rhino is used.
The Rhino at issue herein was in use when it "popped" off the fence post (see NYSCEF Doc No. 181). Neither Plaintiff nor anybody else who testified at depositions in this matter ever experienced or contemplated such a hazard. Defendant Long Island Concrete's site safety expert (see NYSCEF Doc No. 200, Darius aff) opined that there was no safety device, mechanism, or process — beyond that which was in place — called for at the time of, and under the circumstances of, the alleged incident. The subject post driver also did not have any attachment point intended for use with a lanyard or restraint or other device to secure the unit against falling from above when in use. (Id. at ¶ 9.)
The Rhino here did not lift or hoist anything at the time of the accident. Simply put, the Rhino, positioned on top of the post, is designed to slide up and down, and pound the post into position. In fact if the Rhino were to be secured somehow, it would defeat the purpose of the tool: to be able to move like a jackhammer in order to pound a fence post into the ground, a point made by Defendant Long Island Concrete's site safety expert (see NYSCEF Doc No. 200, Darius aff at ¶ 10). And although the purpose of the sleeve of the Rhino is to keep the 55+ pound Rhino on the post until it could safely be removed after the post is set onto the ground, i.e., the Rhino is manufactured with its own safety component, the malfunctioning of the safety device in and of itself cannot form the predicate for a Labor Law § 240 (1) claim. Moreover, there is evidence in [*9]the record suggesting that a co-worker of Plaintiff might have caused the popping up of the Rhino by pressing the trigger (id. at 8).[FN5]

In determining the Labor Law § 240 (1) issue, this Court is guided by the Court of Appeals decision in Narducci v Manhasset Bay Assoc. (96 NY2d 259). While two cases were determined in the Court's opinion, the relevant one is that of plaintiff Narducci, whose arm was injured by a falling piece of glass which he had not been working on. Significantly, the Court wrote as follows:
With respect to falling objects, Labor Law § 240 (1) applies where the falling of an object is related to "a significant risk inherent in . . . the relative elevation . . . at which materials or loads must be positioned or secured" (Rocovich v Consolidated Edison Co., supra, 78 NY2d, at 514). Thus, for section 240 (1) to apply, a plaintiff must show more than simply that an object fell causing injury to a worker. A plaintiff must show that the object fell, while being hoisted or secured, because of the absence or inadequacy of a safety device of the kind enumerated in the statute (see, e.g., Pope v Supreme-K.R.W. Constr. Corp., 261 AD2d 523; Baker v Barron's Educ. Serv. Corp., 248 AD2d 655).
. . . This was not a situation where a hoisting or securing device of the kind enumerated in the statute would have been necessary or even expected.
Furthermore, while the risk of falling glass is assuredly greater at a warehouse whose windows have been damaged in a fire, that is not the type of risk that Labor Law § 240 (1) was intended to address. Absolute liability for falling objects under Labor Law § 240 (1) arises only when there is a failure to use necessary and adequate hoisting or securing devices. The absence of a necessary hoisting or securing device of the kind enumerated in Labor Law § 240 (1) did not cause the falling glass here. This was clearly a general hazard of the workplace, not one contemplated to be subject to Labor Law § 240 (1) (see, Misseritti v Mark IV Constr. Co., 86 NY2d 487). (96 NY2d at 267-269.)
Nobody involved in what transpired at the site where a fence was being constructed in the case at bar contemplated that the Rhino was going to pop up. It was a bizarre occurrence. There is no evidence that a popping up Rhino is a risk inherent in the use of the tool. There is nothing in the record evidence demonstrating that there exists a commonly used device to prevent it from happening. It is probably a one-of-a-kind occurrence. Apparently, a Rhino is a commonly used tool in fence erection, in terms of setting the posts into the ground, yet there is no case law concerning the accident which led to this lawsuit, according to this Court's research, which only goes to accentuate that the accident was unexpected. Since it was not contemplated or expected, Narducci's rationale must apply.
Moreover, although Labor Law § 240 (1) is thought of as imposing strict liability, it "should be construed with a commonsense approach to the realities of the workplace at issue" (Stoneham v Joseph Barsuk, Inc., 41 NY3d 217, 221 [2023] [internal quotation marks omitted], [*10]quoting Nicometi v Vineyards of Fredonio, LLC, 25 NY3d 90, 101 [2015]). "Labor Law § 240 (1) does not apply every time an employee is injured as 'the result of an elevation differential' (dissenting op at 226). '[A]n accident alone does not establish a Labor Law § 240 (1) violation' (Abbatiello, 3 NY3d at 50)." (Stoneham, 41 NY3d at 221.) As applied here, this means that when a tool produces an unforeseen and unexpected accident which nobody has knowledge of ever having occurred previously, the accident could not have been intended to lie within the ambit of a statute designed to deal with obviously risky gravity-related construction hazards.
As a result, Plaintiff did not present a prima facie case of entitlement to summary judgment on the Labor Law § 240 (1) claim (see CPLR 3212 [b]; Smalls v AJI Industries, Inc., 10 NY3d 733; Alvarez, 68 NY2d 320; Winegrad, 64 NY2d 851; Andre, 35 NY2d 361). This incident most likely arose because there was a problem with the device itself, or because a co-worker pressed the trigger prematurely.
On the other hand, moving Defendants have established the absence of a material issue of fact as to their liability in terms of the Labor Law § 240 (1) claim; it does not apply as a matter of law (see Alvarez, 68 NY2d 320; Winegrad, 64 NY2d 851; Andre, 35 NY2d 361).
Consequently, Plaintiff's motion must be denied, and moving Defendants' motions must be granted to the extent that they seek dismissal of the Labor Law § 240 (1) claim.

 Other Issues Raised in Defendants' Motions
The record evidence demonstrates that none of the moving Defendants (neither Long Island Concrete Inc., Suffolk Construction Company, Inc., nor The YMCA of Greater New York) had supervision or control of the means and methods of Plaintiff's work. None of them had notice, actual or constructive, of any defect in the Rhino. Therefore, there can be no liability under Labor Law § 200 or common law negligence.[FN6]

In terms of Labor Law § 241 (6), it is manifest that there is no Industrial Code provision which covered the subject situation. For example, neither §§ 23-1.7 (a) (1), 23-1.7 (b) (1) (ii), 23-1.8 (c) (1), and 23-1.10 (b) (1) apply.
While Defendants Suffolk Construction Company, Inc. and The YMCA of Greater New York's motion contains a branch seeking contractual indemnification against Long Island Concrete for all costs, expenses, attorneys' fees, damages, and/or liability incurred, such affirmative relief is not warranted in light of the Court's dismissal of the complaint.

 Issues Raised by Third-Party Defendant Eagle Fence's Motion
Third-Party Defendant Eagle Fence has moved to dismiss on summary judgment Third-Party Plaintiff's causes of action for common law indemnity and contribution on the basis that Plaintiff did not suffer a grave injury in connection with the September 20, 2018 occurrence (see NYSCEF Doc No. 202, Williams aff ¶ 2).
Although an employer cannot be held liable in this incident because there is workers compensation insurance for that purpose, an employer can be held liable if the plaintiff suffered a grave injury. "As amended in 1996, Workers' Compensation Law § 11 permits an employer to be held liable for contribution or indemnity only where the third-party plaintiff provides through competent medical evidence that the employee sustained a 'grave injury.' The term 'grave injury' has been defined as a 'statutorily defined threshold for catastrophic injuries' * * * and includes [*11]only those injuries which are listed in the statute and determined to be permanent. Furthermore, the statutory list of grave injuries was intended to be 'exhaustive, not illustrative' (Governor's Mem. approving L. 1996, ch. 635, 1996 McKinney's Session Laws of NY, at 1913)" (Curran v Auto Lab Serv. Ctr., Inc., 280 AD2d 636, 638 [2d Dept 2001]).[FN7]
Here, Plaintiff did not suffer a grave injury in connection with the September 20, 2018 occurrence.
Likewise, Third-Party Defendant Eagle Fence has moved to dismiss on summary judgment Third-Party Plaintiff's cause of action for contractual indemnity on the basis that no formal written agreement exists between Third-Party Defendants Eagle Fence and Third-Party Plaintiff concerning the work being performed at the time of the occurrence (see NYSCEF Doc No. 202 at ¶ 3).
Since Third-Party Defendants Eagle Fence's motion is unopposed, it should be granted.

 Conclusion
Accordingly, the following is hereby ORDERED:
Motion Sequence 8: The motion by Plaintiff Victor D'Arrigo ("Plaintiff"), for an order granting him partial summary judgment on his Labor Law § 240 (1) cause of action against Defendant/Third Party Plaintiff Long Island Concrete Inc. and Defendants Suffolk Construction Company, Inc. and The YMCA of Greater New York is DENIED.
Motion Sequence 9: The motion by Defendant/Third-Party Plaintiff Long Island Concrete Inc. for an order pursuant to CPLR § 3212 granting it summary judgment and dismissing Plaintiff's complaint in its entirety along with any and all cross-claims is GRANTED.
Motion Sequence 10: The motion by Third-Party Defendants Barbieri Fence Corp. d/b/a Eagle Fence a/k/a Eagle Fence NYC and Eagle Fence NYC for an order pursuant to CPLR § 3212 granting summary judgment in their favor and dismissing the third-party complaint and all claims against them is GRANTED.
Motion Sequence 11: The motion by Defendants Suffolk Construction Company, Inc. and The YMCA of Greater New York for an order pursuant to CPLR § 3211 and CPLR § 3212 granting summary judgment: (1) dismissing Plaintiff's claims against them, (2) dismissing Defendant Long Island Concrete's cross-claims against them, and (3) awarding them complete contractual indemnification against Long Island Concrete for all costs, expenses, attorneys' fees, damages, and/or liability incurred, is determined as follows: The branches seeking summary judgment (1) dismissing Plaintiff's claims against them, and (2) dismissing Defendant Long Island Concrete's cross-claims against them, are GRANTED, and the branch seeking summary judgment (3) awarding them complete contractual indemnification against Long Island Concrete for all costs, expenses, attorneys' fees, damages, and/or liability incurred is DENIED.
The Clerk shall issue judgment dismissing the complaint and reflecting the provisions of this decision and order.
Enter
Hon. Aaron D. Maslow

Footnotes

Footnote 1:Transcripts may be procured from the court reporter (see Matter of Lewandowski v Office of Ct. Admin., 173 Misc 2d 335 [Sup Ct, Albany County 1997]).

Footnote 2:The Rhino is a pneumatic tool that weighs between 55 and 80 pounds (see McGrath aff ¶ 6). According to the Rhino Tool website, "With more than 45 years [of] experience [ ] in manufacturing American Made Post Drivers, Rhino Tool is the leader in high-quality, hand-held post drivers, post pounders, air hammers and accessories. We provide innovative solutions for post installation that are easier, faster, and require less manpower and equipment. In addition to improved ergonomics and safety, Rhino Tool has maintained a commitment to exceptional customer service, expert technical support, and [is] continuing to grow our network of over 350 servicing dealers worldwide." (https://rhinotool.com/#:~:text=RHINO%20TOOL%20%7C%20UNSTOPPABLE%20DRIVE&text=We%20provide%20innovative%20solutions%20for,require%20less%20manpower%20and%20equipment.)

Footnote 3:There exists a discrepancy regarding the weight of the Rhino at issue here. For example, Plaintiff testified that the Rhino weighed approximately 55 pounds (see NYSCEF Doc No. 174, Pltf EBT tr at 41) and Plaintiff's co-worker testified that the Rhino weighed approximately 80 pounds (see NYSCEF Doc No. 177, Formisano EBT tr at 11). Nonetheless this has no relevant consequential effect on the outcome.

Footnote 4:The subject post driver (Rhino Model PD-55, Serial Number 2003381) has a 20-page manufacturer's owner's manual, which does not contain any instructions or warnings as to how to use any device or mechanism to secure the post driver against falling when in use. Additionally, the manufacturer's website, which can be accessed through www.rhinotool.com, does not contain any instructions or warnings to use any device or mechanism to secure the post driver against falling when in use, and does not offer for sale any device or mechanism to be used for such a purpose (see NYSCEF Doc No. 200, Darius aff).

Footnote 5:Of course, if the co-worker caused the Rhino to pop up by pressing the trigger, perhaps prematurely, there is no liability on the co-worker's part (see McNulty v Port Wash. Police Dist., 191 AD3d 659 [2d Dept] [Workers' Compensation is exclusive remedy when both plaintiff and defendant are acting within scope of their employment as co-employees at time of injury]; Power v Frasier, 131 AD3d 461 [2d Dept 2015]).

Footnote 6:The Court notes that the manufacturer of the Rhino was not named as a defendant herein.

Footnote 7:According to New York's Workers' Compensation Law § 11, a "grave injury" is an injury that results in the following: death; permanent and total loss of use or amputation of an arm, leg, hand, or foot; loss of multiple fingers or toes; paraplegia or quadriplegia; total and permanent blindness or deafness; loss of nose or ear; permanent and severe facial disfigurement; and acquired injury to the brain caused by an external physical force resulting in permanent total disability.